# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Tiffany B., | |
| Plaintiff, | No. 22-cv-1227 (ECT/DLM) |
| v. | |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tiffany B. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits. This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 13–15 (Plaintiff's motion and supporting pleadings), 20–21 (Commissioner's motion and supporting pleadings), 22 (Plaintiff's reply memorandum).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons which follow, the Court recommends that Plaintiff's motion for summary judgment be granted, the Commissioner's motion be denied, and the matter be remanded for further proceedings consistent with this opinion.

## BACKGROUND

On October 7, 2019, Plaintiff applied for Supplemental Security Income ("SSI"), alleging she had been disabled since June 1, 2018. (Tr.[1] at 329–38.) The Social Security Administration denied her claim initially (Tr. at 253–56), and upon reconsideration (Tr. at 266–68). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on March 9, 2021. (Tr. at 270–72 (Appeal), 203–22 (Hearing Transcript).) Plaintiff was represented by counsel at the hearing, and testified on her own behalf. (Tr. at 203, 208–18.) A vocational expert also testified, opining that there were jobs in the national economy that were suitable for a person with physical and mental limitations similar to Plaintiff's. (Tr. at 218–22.) Plaintiff's counsel did not ask any questions of the vocational expert. (*Id.*)

On April 6, 2021, the Commissioner sent notice of an unfavorable decision to Plaintiff. (Tr. at 8–37.) The ALJ recognized that Plaintiff suffered from several severe impairments, including fibromyalgia, obesity, neuralgia, degenerative disc disease, carpal tunnel syndrome, depression, and anxiety. (Tr. at 13.) Additionally, the ALJ acknowledged that Plaintiff had several non-severe impairments, including hypothyroidism, migraines, splenomegaly (enlargement of the spleen), and anemia, as well as symptoms of post-traumatic stress disorder. (Tr. at 14.)

---

[1] The Commissioner filed the consecutively paginated transcript of the administrative record on July 8, 2022. (Doc. 11.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document rather than docket page number or exhibit number.

Despite Plaintiff's mental and physical impairments, the ALJ found that she did not qualify for benefits. (Tr. at 8.) First, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined by 20 C.F.R. § 416.967(a) (except that she could walk four hours during an eight-hour workday),[2] provided the job included additional limitations to account for most of Plaintiff's impairments. (Tr. at 18.) Next, the ALJ credited the testimony of the vocational expert that there were at least three representative occupations which were listed in the Dictionary of Occupational Titles ("DOT") that could be performed by a person with similar limitations to Plaintiff:  document preparer (DOT 249.587-018);[3] touch-up screener (DOT 726.684-110); and semi-conductor bonder (DOT 726.685-066). (Tr. at 31.) Because there were sufficient jobs available in the national economy for someone with Plaintiff's limitations, the ALJ found her not disabled under the evaluative process set forth in 20 C.F.R. § 416.920. (*Id.*)

Plaintiff does not challenge any of the ALJ's determinations of her physical impairments or limitations. Rather, Plaintiff asserts the ALJ legally erred in evaluating her mental impairments by discrediting portions of the state agency psychological expert prior administrative medical findings without discussing whether those medical opinions

---

[2] By regulation, "a sedentary job is defined as one which involves sitting," even if "walking and standing are required occasionally." 20 C.F.R. § 416.967(a).

[3] The vocational expert testified that the document preparer position had changed somewhat since issuance of the Dictionary of Occupational Titles, but that the skill, reasoning, and exertional levels of the position were still such that it could be performed by a person with Plaintiff's limitations. (Tr. at 221.)

were supported by, and consistent with, record evidence. *See* 20 C.F.R. § 416.920c. Both state agency psychological experts, Jeffrey Boyd, Ph.D., and David Biscardi, Ph.D., opined that Plaintiff could only tolerate "brief and superficial" interactions with coworkers and the public. (Tr. at 234 (Dr. Boyd); *accord* Tr. at 250 (Dr. Biscardi).) The ALJ found, however, that Plaintiff could tolerate "occasional" interactions with supervisors, coworkers, and the public. (Tr. at 18, 29.) According to Plaintiff, the ALJ unreasonably ignored the state experts' prior administrative medical findings about the limitations on the quality of her workplace interactions, and erred by not including those limitations when considering Plaintiff's RFC.

## ANALYSIS

This Court reviews an ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision is infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1089 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to ascertain whether it contains sufficient evidence to support the ALJ's conclusion. *Id.*; *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021). Where substantial evidence supports the ALJ's decision, the Court will not reverse, even if

4

substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. But if an ALJ improperly evaluates the persuasiveness of prior administrative medical findings, that is a legal error subject to de novo review. *Joel M. B. v. Kijakazi*, No. 21-cv-1660 (PAM/ECW), 2022 WL 1785224, at *2 (D. Minn. June 1, 2022) (citing *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011)); *Michael B. v. Kijakazi*, No. 21-cv-1043 (NEB/LIB), 2022 WL 4463901, at *1 (D. Minn. Sept. 26, 2022)

Plaintiff does not contest that the ALJ followed the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4)[4] for evaluating SSI claims. Rather, Plaintiff asserts that in determining her RFC, the ALJ inexplicably omitted certain limitations recommended by two state psychological experts, resulting in an RFC that did not reflect her actual impairments, and did so without the explanation legally required under 20 C.F.R. § 416.920c. Drs. Boyd and Biscardi both opined that Plaintiff's workplace interactions must be "brief" and "superficial."[5] (Tr. at 234, 250.) The ALJ omitted these

---

[4] Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments are severe, and of a duration of least 12 continuous months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment under appendix 1 to subpart P of part 404. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's RFC, and determine (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i–v), (d)–(e).

[5] Plaintiff focuses most of her argument on the difference between "superficial" and "occasional," but the Court observes that there are also differences between "brief" and "occasional" which merit further consideration in the Court's analysis.

5

two limitations from Plaintiff's RFC, however, instead finding that Plaintiff could tolerate "occasional" workplace interactions without comment on the length or quality of each contact.[6] (Tr. at 18, 29.)

For her part, the Commissioner argues that the evidence adequately supports the ALJ's substitution of the term "occasional" for "brief" and "superficial," as evidenced by the ALJ's many citations to the administrative record. The Commissioner maintains that because the ALJ crafted an RFC that is supported by substantial evidence, the ALJ committed no reversible error. If there was error, the Commissioner continues, it was harmless because each of the available DOT jobs that the ALJ identified already involved the lowest level of interpersonal interaction, and thus, Plaintiff's proposed revision to the RFC would have no impact.

Plaintiff filed her claim on October 7, 2019, so 20 C.F.R. § 416.920c governs how an ALJ evaluates prior administrative medical findings of the state agency psychologists. *See Pemberton v. Saul*, 953 F.3d 514, 517 n.2 (8th Cir. 2020) (discussing that 20 C.F.R. § 404.1520c applies to the consideration of prior administrative medical findings for claims filed on or after March 27, 2017).[7] The regulation requires that an ALJ consider a number of factors, but prioritize the factors of supportability and consistency as the most

---

[6] Plaintiff also complains that the ALJ's concentration, persistence, and pace limitations differed from Drs. Boyd and Biscardi. (Pl.'s Mem. Supp. at 9.) The record does not support this assertion. The ALJ found Plaintiff to have a moderate limitation related to concentration, persistence, and pace. (Tr. at 16.) So did both state psychological experts. (Tr. at 231 (Dr. Boyd), 249 (Dr. Biscardi).)

[7] "For claims filed on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 416.927 apply." 20 C.F.R. § 416.920c.

important. 20 C.F.R. § 416.920c(a), (b)(2). While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. § 416.920c(c)(1), (2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729. But at the very least, regulations require that the ALJ explain how they considered the supportability and consistency factors in evaluating a psychological expert's prior administrative medical findings. 20 C.F.R. § 416.920c(b)(2); *Michael B.*, 2022 WL 4463901, at *2 (failure to articulate supportability analysis is a legal error that requires remand); *Bonnett v. Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) (per curiam) (failure to articulate consistency with the record is a legal error that requires remand). "The ALJ need not use the magic words of 'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

Here, the ALJ found the psychological expert prior administrative medical findings of Drs. Boyd and Biscardi to be partially persuasive, determining that Plaintiff

was *more* limited in managing herself than the experts opined.[8] (*Compare* Tr. at 231, 249–50 (Drs. Boyd and Biscardi concluding Plaintiff had a mild limitation in ability to adapt or manage herself) *with* Tr. at 17, 29 (ALJ concluding Plaintiff had a moderate limitation in this area).)). With little explanation, the ALJ then substituted the psychological experts' finding that Plaintiff could engage in "brief and superficial" interactions with the ALJ's own finding that Plaintiff could tolerate "occasional" interactions with coworkers, supervisors, and the public. (*Compare* Tr. at 234, 250 *with* Tr. at 18, 29.)

The Commissioner does not argue that the ALJ merely used different words that had the same meaning as those that the psychological experts used to describe the character of interactions Plaintiff could tolerate. Nor could she: "brief" refers to the length of a particular interaction, and "superficial" refers to the quality of the interaction; but "occasional" refers to how often such interactions occur. (Pl.'s Ex. A at 3–4.) Simply put, the terms are not synonymous. And the Court concludes that the ALJ's substitution of terms without any explanation—let alone one that follows 20 C.F.R. § 416.920c's required discussion of supportability and consistency—constitutes legal error.

The ALJ's inclusion of citations to the record is not enough, on its own, to satisfy the governing regulations. Specifically, the ALJ recognized that Plaintiff saw a neurologist in July of 2019 who diagnosed her with anxiety and depression. (Tr. at 20; *see also* Tr. at 469 (treatment notes indicating Plaintiff's anxiety and depression were

---

[8] Neither party challenges the ALJ's determination on this issue.

"significant").) The neurologist prescribed Plaintiff medication and referred her for mental health treatment. (Tr. at 20.) The ALJ otherwise documented Plaintiff's history of medical and therapeutic appointments, (Tr. at 20–21), but nothing in those records provides support for the ALJ's decision to reject the psychological experts' conclusion that Plaintiff's workplace interactions would have to be brief and superficial, and instead find that Plaintiff could tolerate occasional interactions (of indeterminate length and any quality). (*See generally* Tr. at 464–70, 551–71.) And the ALJ's decision does little to guide this exercise, as it merely recites summaries of certain treatment notes without explanation of how those portions of the record demonstrate a lack of support for, and consistency with, the experts' prior administrative medical findings, as is legally required by 20 C.F.R. § 416.920c.

Beyond the medical record evidence, Plaintiff's own testimony and statements—which the ALJ largely credited—do not conflict with the prior administrative medical findings of the psychological experts. At the hearing on this matter, Plaintiff testified that she last worked in 2009. (Tr. at 210.) At the time of the hearing, she lived with her brother in a trailer home, and supervised her teenage nephews in exchange for a bedroom in the home. (Tr. at 208, 211.) On school days, one of her nephews would come home at 2:00 p.m., and the other would arrive at 4:00 p.m., and Plaintiff would babysit them until about 9:00 p.m.[9] (Tr. at 211.) Plaintiff testified that when babysitting, she spent a good

---

[9] The ALJ stated that Plaintiff watched her nephews "all full time weekend as well." (Tr. at 15.) This is not consistent with the record, as Plaintiff testified just the opposite: "The

deal of her time in her room, coming out to check on her nephews occasionally or to cook for them if necessary. (*Id.*) Plaintiff's description of her interactions with her nephews is consistent with the psychological experts' limitations to brief and superficial contact. As Plaintiff said about her own nephews, "[i]f they need me, they know where to find me." (*Id.*) Nothing in the record supports the conclusion that Plaintiff's interactions with coworkers or the public would be of a more substantial quality or duration than those with her nephews.

Finding error in the ALJ's partial rejection of expert prior administrative medical findings does not end the matter, however. "A plaintiff bears the burden of demonstrating that an agency's error is harmful." *Christopher J. B. v. Kijakazi*, No. 20-cv-2631 (JFD), 2022 WL 2806374, at *7 (D. Minn. July 18, 2022) (citing *Shinseki v Sanders*, 556 U.S. 396, 409 (2009); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). This means that Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred." *Byes*, 687 F.3d at 917.

Whether the error here was harmless presents a close question. The ALJ determined that someone with Plaintiff's limitations could perform the jobs of document preparer, touch-up screener, and semi-conductor bonder. (Tr. at 31.) As the Commissioner correctly notes, each of these jobs already assume a "Level 8" amount of interpersonal interaction, which is the lowest level recognized by the Dictionary of Occupational Titles. *See* DOT App'x B, Explanation of Data, People and Things

---

weekends, I usually—I'm usually *off* watch full time at that point." (Tr. at 211 (emphasis added).)

(identifying Level 8 interactions as "[a]ttending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.)"). According to the Commissioner, swapping Plaintiff's requested language about the quality and duration of interpersonal interactions into her RFC would make no difference, since Level 8 jobs already assume an extremely limited amount of interpersonal contact.

In prefacing the description of its eight different "levels" of "People" relationships, the DOT cautions that "each of the relationships to People represents a wide range of complexity, resulting in considerable overlap among occupations," such that "their arrangement is somewhat arbitrary and can be considered a hierarchy only in the most general sense." DOT App'x B, Explanation of Data, People and Things (Preamble). Put more simply, the DOT's quantification of the "level" of interpersonal interaction necessary for each job is imprecise. As such, the Court declines the Commissioner's invitation to assume that each and every Level 8 job could satisfy a limitation that the claimant only have brief and superficial workplace interactions. *See, e.g.*, *Lucus v. Saul*, 960 F.3d 1066, 1070 (8th Cir. 2020) (where a court cannot ascertain whether the ALJ would have reached the same conclusion absent legal error, the error cannot be deemed harmless).

Additionally, times have changed. The Dictionary of Occupational Titles was last updated in 1991. *See Medved v. Kijakazi*, 855 F. App'x 311 (8th Cir. 2021) (citing *Purdy v. Berryhill*, 887 F.3d 7, 14 n.10 (1st Cir. 2018)). ALJs, vocational experts, and judges routinely acknowledge variations in jobs that have occurred since the time of the DOT's

11

last update. *See, e.g.*, *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *15 (D.S.D. July 14, 2022) (calling the DOT "a document that egregiously has not been updated since 1991 and is comfortably divorced from reality in 2022"); *Poole v. Kijakazi*, 28 F.4th 792, 795 (7th Cir. 2022) ("[T]he fact that the DOT was last revised before the Internet revolution means that it is a resource that must be used with care. Recognizing that the DOT is increasingly out of step with the modern economy, the [SSA] has been planning for years to replace it . . . .") (citing *Chavez v. Berryhill*, 895 F.3d 962, 965 (7th Cir. 2018)). The ALJ put no questions to the vocational expert about any such variations related to the "People" field of the jobs that the vocational expert identified, nor did the ALJ question the vocational expert about whether a person with Plaintiff's limitations—including brief and superficial interactions within the workplace—could find work in the national economy. (Tr. 218–22.) With an incomplete record on these points, the Court cannot find the ALJ's error in discounting the psychological experts' prior administrative medical findings without sufficient explanation (and potentially misstating Plaintiff's RFC) harmless.

## RECOMMENDATION

Based on the foregoing, as well as the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 13) be **GRANTED**;

2. Defendant's Motion for Summary Judgment (Doc. 20) be **DENIED**; and

3. The matter be remanded to the ALJ for proceedings consistent with this Recommendation.

DATED:  May 22, 2023            *s/Douglas L. Micko*
                                DOUGLAS L. MICKO
                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).